## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-cr-30033 |
| | ) | |
| TYRON D. FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

RICHARD MILLS, U.S. District Judge:

This matter is before the Court on the Report and

Recommendation [d/e 36] entered by U.S. Magistrate Judge Byron G.

Cudmore, and Defendant Tyron Freeman's Motion to Dismiss Charge

[d/e 25], which the Court has construed as a Motion to Suppress

Evidence.

In the Report and Recommendation, Judge Cudmore recommends

denying the Defendant's Motion.  The Defendant has filed Objections to

the Report and Recommendation [d/e 40].

1

After careful consideration, the Court adopts the Report and Recommendation.[1]  The Defendant's Objections are overruled for the following reasons.

<u>OBJECTION 1—AGREEMENT TO SELL DRUGS</u>

The Defendant claims that there was no agreement to sell drugs, and that no individual has admitted that there was an agreement to sell drugs.

The Defendant points out that the confidential source who made telephone calls from the Drug Enforcement Agency ("DEA") office, Confidential Source #1 ("CS #1"), was not able to conclusively determine who he was speaking with at several points during the conversation.  CS #1 could not determine whether he was speaking with the Defendant, or the Defendant's companion on the night of the arrest.

The Defendant also claims that there was no specific agreement to sell narcotics: "the [confidential source] never asked specifically if the speaker has any illegal drug by any name, and there is never an

---

[1]  The Parties are familiar with the facts and procedural background in this case, and this information is fully set out in the Report and Recommendation.  Accordingly, the Court will only address the issues raised in the Defendant's Objections to the Report and Recommendation.

affirmative statement by the speaker that he has any, that he was going to sell it to the [confidential source] or anyone else, or that he was specifically going to the Sav-A-Lot store and sell it to anyone."
Objections to Report and Recommendation [d/e 40], 2.

Judge Cudmore fully addressed this issue in the Report and Recommendation:

> Freeman argues that the recorded phone calls do not evidence a meeting of the minds regarding a drug purchase. It is undisputed that parties to a drug transaction often use code words or slang, and Officer Cordery testified that "6 Bs" is a reference to six eight-balls of crack cocaine. Additionally, the raspy voiced individual did not respond "I ain't got it" to the request for "6 Bs," rather, "I ain't got it" was the response when Carter asked him to "throw me something for, dude and them, man.

Report and Recommendation [d/e 36], 13, n.2.

As Judge Cudmore noted, the use of code words is common in drug transactions. *See generally United States v. Are*, 590 F.3d 499, 512 (7th Cir. 2009). Therefore, the fact that the transaction was not explicitly set out by telephone does not mean that there was not probable cause to believe that a drug transaction had been arranged.

### Objection 2—Link Between the Phone Called by CS #1 and Defendant Freeman

The Defendant claims that there was no connection between the phone called by CS #1 and Freeman.  This claim is without merit.

As Judge Cudmore detailed in the Report and Recommendation, the Defendant was the passenger in the minivan.  After securing Freeman and his companion, agents had CS #1 call the phone number used by the raspy-voiced individual offering to sell drugs.  A cellular telephone on the armrest of the passenger-side door began to ring immediately thereafter.

The Defendant complains that the telephone was not fingerprinted and that telephone records were not presented to the Court.  However, the information stated in Judge Cumore's Report and Recommendation is sufficient to establish a link between the telephone and the Defendant.

## OBJECTION 3— SIGNIFICANCE OF CS #1's CREDIBILITY

The Defendant asserts that the credibility of CS #1 is significant as to whether there was probable cause to arrest and search the Defendant.

In the Objections, the Defendant states: "Confidential Source #1, as noted above, never identified Freeman as the person he was speaking to, until after Freeman's arrest when he was shown photos of Freeman. This individual's credibility is significant because it underlies the stop of

the vehicle in which Freeman was riding." Objections [d/e 40], 4-5. The Defendant then notes that this was the first time that CS #1 had successfully participated in a law enforcement operation that came to fruition.

The Defendant's argument is without merit. CS #1's credibility is not a material issue related to suppression. All of the telephone calls in which CS #1 participated were made from the DEA office. Agents and officers were on the ground at the transaction location. CS #1 was merely a cog within a broader sting operation.

This is distinguishable from a situation where a confidential source comes forward with information about illicit activity, and officers must take the confidential source's story on faith. Here, the officers were observing the entire operation from start to finish, and had real-time verification of CS #1's efforts. Therefore, CS #1's credibility is not significant.

<u>Objection 4—Use of Information from Confidential Source Number 2 in Carrying Out Strip Search</u>

Officer Baeher testified that Confidential Source Number 2 (CS #2) had previously stated that the Defendant had previously transported

drugs in his buttocks. The Defendant claims that the information CS #
2 provided should not have formed the basis for the strip search.

The Defendant argues that this information is insufficient because
CS #2 accompanied the Defendant on four or five trips to Chicago, and
the Defendant only transported drugs in his buttocks on one of these
occasions. The Defendant also points out that the conversation
regarding this information was took only a few minutes, while Officer
Baeher's total conversation with CS #2 took place over several hours.

The Defendant asserts that reports that a suspect has transported
drugs in his buttocks on one previous occasion cannot give rise to
reasonable suspicion that a suspect is carrying drugs in his buttocks
following a drug arrest where the drugs were not recovered. The
Defendant cites no case law for this proposition.

The Court holds that an officer's knowledge of a suspect's transport
of drugs in the buttocks on one prior occasion can give rise to reasonable
suspicion that a suspect is carrying drugs in his buttocks under the
circumstances of this case.

Following his arrest, the Defendant was seen fidgeting uncomfortably and did not appear to be sitting normally.

Finally, Judge Cudmore has referenced numerous other indicators that suggested that the Defendant had the narcotics on his person. *See* Report and Recommendation [d/e 36], 18.

In light of these circumstances, reasonable suspicion existed to conduct the strip search.

## OBJECTION 5—CREDIBILITY OF CS #2

The Defendant asserts that CS #2 is not credible. The Seventh Circuit announced that when assessing the credibility of an informant, four factors should be examined: (1) whether the informant possessed firsthand knowledge, (2) whether the informant provided sufficient details to law enforcement, (3) whether the informant relayed information that was later corroborated, and (4) whether the informant testified at the suppression hearing. *See United States v. Cruz-Rea*, 626 F.3d 929, 939 (7th Cir. 2010). "No single factor is dispositive, and a deficiency in one factor may be compensated for by a strong showing in

another or by some other indication of reliability." *Id.* (quotation marks and citation omitted).

CS #2 did not testify, but he did have first-hand knowledge of the Defendant's prior storage of drugs in his buttocks. In addition, it appears that sufficient details were provided to law enforcement. Finally, regarding corroboration, in this case CS #2's statement was corroborated when the strip search was performed at the Sangamon County Jail.

Moreover, as Judge Cudmore pointed out, CS #2 had previously helped with three to four controlled narcotics purchases and two search warrants. *See* Report and Recommendation [d/e 36], 8. This is very strong evidence of reliability. Therefore, the Court concludes that CS #2 was a reliable informant.

The Defendant's arguments regarding CS #2's criminal background, history of dishonesty, and motivation are without merit. Confidential sources are not generally stellar members of society, and most act out of self-interest. However, their value lies in their detailed knowledge of criminal activities. After all, model citizens will rarely know who is hiding narcotics in their body cavities.

The systemic issues that arise in dealing with informants are taken into account by courts in setting out the standards for determining reliability. To the extent that CS #2's negative background relates to a credibility determination, his background is overshadowed by his successful track record as an informant.

<u>OBJECTION 6—OFFICERS CALLED PROSECUTOR</u>

The Defendant's final objection is that the officers knew that they did not have probable cause because they called an assistant state's attorney for guidance. The Defendant suggests that because the officers did not know what to do, they did not have probable cause.

Probable cause is an objective standard that does not depend upon the subjective motivations of an individual officer involved in the arrest or search. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). Furthermore, it is very common for agents and officers to consult with prosecutors when they are uncertain of their legal footing, and many prosecutors' offices assign attorneys to be on-call. *See United States v. Wyatt*, 133 Fed. Appx. 310, 312 (7th Cir. 2005); *Goldenbaum v. DeLorenzo*, NO. CIV. A. 08-1127 MLC, 2010 WL 5139991, at *2

(D.N.J. 2010); *Blake v. County of Livingston*, No. 03-74097, 2006 WL 1134443, at *4 (E.D. Mich. 2006).

In general, officers and agents in the field should be encouraged to consult with prosecutors when they are uncertain how to proceed in complex Fourth Amendment situations. This area of the law is fact-dependent, and prosecutors can guide the police in lawfully carrying out their duties while respecting the constitutional rights of individuals. The Court will not assume bad faith when a police officer calls a prosecutor for advice, and refuses to discourage this kind of contact.

CONCLUSION

*Ergo*, the Court hereby OVERRULES the Defendant's Objections [d/e 40], ADOPTS the Report and Recommendation [d/e 36], and DENIES the Defendant's Motion to Dismiss [d/e 25], which the Court has construed as a Motion to Suppress.

IT IS SO ORDERED.

ENTER: January 11, 2010

FOR THE COURT:                    s/Richard Mills
                                  United States District Judge