**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-cr-30033** |
| | ) | |
| **TYRON FREEMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Tyron Freeman's Second Amended Motion for Compassionate Release (Doc. 126).

## I. BACKGROUND

Defendant Tyron Freeman moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In support of the motion, Defendant states he suffers from various chronic health conditions that place him at high risk for serious illness or death from COVID-19, despite receiving the vaccine, Defendant proposes his serious conditions, either alone or in conjunction with the COVID-19 risk, in addition to consideration of the 18 U.S.C. § 3553(a) factors, constitute extraordinary and compelling circumstancing warranting compassionate release. (Doc. 126, Sec. Amend. Mot. Compassionate Rel., 1.) In its response, the Government opposes Defendant's motion on the basis that he receives more than adequate medical care at the Federal Medical Center in Rochester, Minnesota, there is no reason to believe he is unable to benefit from the COVID-19 vaccines, and his

arguments concerning the § 3553(a) sentencing factors are without merit. (Doc. 128, Govt. Resp.)

Defendant is a 46-year old African-American male currently housed at Rochester FMC with a projected release date of February 3, 2027. *See* bop.gov/inmateloc (last accessed October 23, 2023). On July 13, 2011, following a conviction for possession with the intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B), Defendant was sentenced to a term of 360 months imprisonment and eight years of supervised release. (Doc. 126, 2.) Because the Government filed a notice of prior convictions under 21 U.S.C. § 851, Defendant was subject to enhanced minimum and maximum penalties when he was sentenced. (*Id.*) Defendant states none of those prior convictions would today qualify as serious drug felonies triggering enhanced penalties under §§ 841 and 851. (*Id.* at 2-3.) He was sentenced as a career offender. (*Id.* at 3.) On July 31, 2020, Defendant's sentence was reduced to 262 months imprisonment under the First Step Act. (*Id.* at 3.) Defendant has been detained since May 6, 2009, and thus has served more than 173 months of a 262-month term. (*Id.*)

Defendant suffers from severe obesity, Type I Diabetes, hypertension, and long-haul COVID symptoms. (*Id.* at 2.) He has also been diagnosed with Stage II Chronic Kidney Disease, hypothyroid, neuropathy, osteomyelitis, chronic infectious wounds, hyperlipidemia, deep vein thrombosis, venous stasis ulcers, and venous insufficiency. (*Id.*) Defendant claims this combination of serious health conditions places him at risk for COVID-19, despite having received vaccines. (*Id.* at 4.) Defendant has also suffered an amputation due to a non-healing infectious wound. Defendant claims his health risks are

significantly enhanced due to the prevalence of infectious bacteria in prisons. (*Id.*) In his reply brief, Defendant states he is again wheelchair bound because of a 2.5 inch non-healing infectious wound on his foot and has been ordered by physicians not to stand up at all. (Doc. 131, Def. Reply, 1.)

Defendant claims the existence of COVID-19 along with his myriad of chronic and deteriorating health conditions provide extraordinary and compelling reasons for compassionate release. (*Id.* at 7-13.) Defendant further contends his health conditions alone constitute extraordinary and compelling reasons supporting compassionate release. (*Id.* at 13-17.) Finally, Defendant claims the sentencing factors weigh in favor of his release. (*Id.* at 17-20.) The Government asserts Defendant has failed to establish extraordinary and compelling reasons that would support compassionate release. (Doc. 128, 3-5.) Even if the Court finds that extraordinary and compelling reasons have been established, the Government argues the application of the sentencing factors under § 3553(a) weigh against compassionate release. (*Id.* at 5-6.)

## II. DISCUSSION

### A. Legal Standards

Under the First Step Act, Pub. L. No. 115-391 (Dec. 21, 2018), defendants may file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary and compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A). Defendant has exhausted his administrative remedies.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) upon finding the existence of "extraordinary and compelling reasons" in considering compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, the Sentencing Commission's policy statements concerning what constitutes extraordinary and compelling reasons warranting compassionate release predate the First Step Act and apply only to motions brought by the BOP itself and not inmates. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

"The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Until U.S.S.G. § 1B1.13 is amended, there is not an "applicable" policy statement for courts to rely on in considering prisoner-initiated applications for compassionate release. *See id.* at 1181; *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023) (Although the Sentencing Commission is in the process of updating its compassionate release guidance, there is currently no binding policy statement defining 'extraordinary and compelling reasons' for early release.").

The U.S. Sentencing Commission has recently updated its policy statements which will become effective November 1, 2023, absent Congressional action. Amendments to the Sentencing Guidelines, Apr. 5, 2023 (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF.pdf. The proposals include a new subcategory to "Medical Circumstances of the Defendant" for defendants suffering from "a serious physical or medical condition," "a serious functional or cognitive impairment," or if defendant is suffering from "a medical condition that requires long-term or specialized medical care, without which the defendant is at risk of serious deterioration in health or death, that is not being provided in a timely or adequate manner." *Id.* at 2, 4-5. The proposals also include additions for "Changes in Law" and expand the categories for "Other Circumstances" that may be considered extraordinary and compelling. *Id.* at 3. Given that the Sentencing Commission appears ready to expand guidance as to § 1B1.13 in a manner that would render him eligible for compassionate release, Defendant asks the Court to consider the proposed guidance as persuasive. (Doc. 126, 10.)

**(1) COVID-19 as Extraordinary and Compelling Reason**

"[T]he availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release" unless the prisoner can show "he is unable to receive or benefit from a vaccine." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). To meet this threshold, the prisoner must present "individualized medical evidence of special vulnerability to severe infection despite his vaccination." *United States v. Clinton*, 2022 WL 2298178, at *1 (7th

Cir. 2022) (citing *Broadfield*, 5 F.4th at 803, and *United States v. Kurzynowski*, 17 F.4th 756, 761 (7th Cir. 2021)); *United States v. Newton*, 37 F.4th 1207, 1209 (7th Cir. 2022) ("That safety valve permits federal prisoners to make motions with newly proffered individualized facts based on concerns like Omicron breakthrough cases, long COVID, or the relative inefficacy of vaccines for certain vulnerable prison populations, like the immunocompromised.").

At the time of his motion, Defendant had received four doses of the COVID vaccine. (Doc. 126, 10.) Attached to Defendant's motion is the report of F. Ramzi Asfour, M.D., who is board certified in Infectious Diseases and Internal Medicine. (Doc. 126-2, 1.) Dr. Asfour concludes that despite the vaccinations, Defendant "remains at high risk for COVID-19 related complications were he to develop COVID-19 infection again." (*Id.* at 10.) This conclusion appears to be based on evidence that Defendant's underlying conditions increase his risk for severe illness or death from COVID. (*Id.* at 11.) The only opinion on Defendant's risk notwithstanding the vaccine is that "[t]he protection provided by COVID-19 vaccination and by prior COVID-19 infection, although significant, decreases over time." (*Id.* at 12.)

Defendant contends that, given his numerous serious health concerns, he has met the "safety valve" under *Newton*. (Doc. 126, 10-11.) However, Dr. Asfour did not indicate as part of his opinion that Defendant "is unable to receive or benefit from a vaccine" as required under *Broadfield*. As the Government notes, he made broad statements about the nature of vaccines and the fact that COVID-19 vaccines become less effective over time. (Doc. 128, 4-5.) Therefore, the Court concludes Defendant has failed to establish that

COVID-19 alone provides an extraordinary and compelling reason for compassionate release.

**(2) Health Conditions Independent of COVID Risk**

Defendant next alleges his numerous health conditions provide extraordinary and compelling reasons in support of compassionate release independent of any COVID risk. (Doc. 126, 13.) The Government acknowledges Defendant has serious health issues but notes "he is housed in a BOP medical facility and receiving more than adequate medical care." (Doc. 128, 5.)

Defendant states that, because of his chronic infectious wounds, he spent months at a time in 2021 and 2022 hospitalized and bedridden. (Doc. 126, 13.) He was hospitalized from June 2, 2021, to September 29, 2021, and March 22, 2022, through June 2, 2022, for infections that did not respond to antibiotics. (*Id.* at 13-14.) During the second hospitalization, Defendant's left fourth toe had to be amputated. (*Id.* at 14.) Defendant's medical records show that between those hospitalizations, he experienced recurrent, non-healing infectious wounds. (Doc. 126-10.)

Defendant further alleges prisons are a breeding ground for infectious bacteria such as Cocci, Enterococcus, and E-coli. (Doc. 126, 14.) Given his weakened immune system and chronic conditions, Defendant is less capable of fighting off these serious infections. (*Id.* at 15.) Defendant has spent much of the past three years of his incarceration in hospital beds and wheelchairs because of chronic, non-healing infectious wounds. (*Id.*) Defendant was also hospitalized in 2020 after a blood clot was found in his left leg and once more for non-healing wounds of the big left toe that required six weeks of IV

antibiotic treatment. (Doc. 126-8, 1.) Defendant notes that, after spending so much time in hospital beds and wheelchairs, his weight skyrocketed and resulted in a Body Mass Index of 54.7 (Ht. 6'0", Wt. 403). (Doc. 126, 16.) At the time of his motion, Defendant had lost over 50 pounds but remained morbidly obese and continued to struggle with regulating his diabetes and chronic wounds occurring on the same leg as his prior amputation. (*Id.*) His BOP medical history reflects 25 differing variations of infection (*Id.*), including Tinea Cruris, cellulitis, abscess, and ulcer. (Doc. 126-3.) Defendant states that, if he were released, he would not be exposed to the prison-borne infectious bacteria which have resulted in his antibiotic resistance and amputation. (Doc. 126, 16.)

Defendant claims that his medical records since 2021 present the image of an individual in declining health. (*Id.* at 16-17.) He has recently suffered deep vein thrombosis, amputation, chronic kidney disease, hypothyroid, and anemia, and his diabetes increased from Type II to Type I, to go along with his existing health issues. (Doc. 126, 17.) Defendant contends his medical records demonstrate extraordinary and compelling circumstances which warrant compassionate release.

Upon reviewing the record, the Court finds that Defendant's health conditions present extraordinary and compelling circumstances that warrant a sentence reduction. The Court recognizes that Defendant receives more than adequate health medical care at FMC Rochester. In the last two years, however, Defendant has spent approximately six months hospitalized due to infections. Infections are prevalent in prison settings and, due to his weakened immune system and chronic conditions, Defendant's ability to fight off infections is diminished. At the time Defendant's reply brief was filed, he was wheelchair

bound due to another 2.5 inch non-healing infectious wound on his foot. If granted compassionate release, Defendant would not be exposed to prison-borne infectious bacteria which thus far have led to antibiotic resistance and amputation. There is reason to believe that Defendant's exposure to bacteria in a prison setting along with his other aforementioned chronic health conditions place him at risk of serious deterioration in his health or death. Therefore, the Court finds Defendant has established extraordinary and compelling circumstances that would warrant compassionate release.

**(3) Section 3553(a) Factors**

If a Defendant establishes extraordinary and compelling reasons that would support compassionate release, the Court must consider the sentencing factors under 18 U.S.C. § 3553(a). These factors include the individual's history and characteristics, the nature and circumstances of the crime, the seriousness of the offense, respect for the law, affording adequate deterrence, protecting the public from further crimes, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

Defendant was convicted of possession of five or more grams of cocaine base ("crack") with the intent to distribute. (Doc. 59, Verdict.) The jury found the substance involved in the offense was 28 or more grams of crack. (*Id.*) There is no question Defendant was convicted of a serious offense, for which he received a lengthy sentence of 30 years' imprisonment—a term that was subsequently reduced to nearly 22 years' imprisonment pursuant to the First Step Act. The Government alleges Defendant's 98-month sentence reduction addresses any sentencing disparities in this case, and a further reduction would diminish the serious nature of his offense and his criminal history. (Doc.

128, 6-7.) If he were sentenced today, however, Defendant's prior convictions would not qualify for sentencing enhancements under 21 U.S.C. § 851. (Doc. 126, 18.) Defendant's statutory maximum term was life at the time of sentencing and was later reduced to 30 years and is now 20 years. 21 U.S.C. § 841(b)(1)(C). If sentenced today, Defendant's guideline range would be 210-262 months. Accordingly, Defendant's First Step Act reduction does not account for all of the changes to the statutory scheme and guideline range. After more than 173 months in custody, Defendant has served approximately 83% of the low end of the current guideline range. While changes in sentencing law cannot constitute an extraordinary and compelling reason supporting compassionate release, such changes can be considered by courts when weighing § 3553(a) factors after finding extraordinary and compelling reasons. *See United States v. Thacker*, 4 F.4th 569, 575-76 (7th Cir. 2021) (citing *United States v. Black*, 99 F.3d 1071 (7th Cir. 2021)). An unwarranted sentence disparity would not result if the Court were to grant Defendant's motion because he has already served over 80% of the low end of the guideline range for a similarly situated individual sentenced under current law.

Defendant does have a lengthy criminal history that warranted career offender status. (Doc. 77, PSR, 12-18.) Most of his prior convictions involved controlled substances, and his adult criminal record includes no convictions involving violence. (*Id.*) The Government states that Defendant is classified by BOP as a medium recidivism risk. (Doc. 128, 6.) However, Defendant has attached to his reply brief an Inmate History which lists him as a low recidivism risk. (Doc. 131-1.) Defendant alleges he was first designated a low recidivism risk in June 2022. He was increased to medium after his transfer to FMC

Rochester until such time as he completed some programming. (Doc. 131, 2.) After completing the programming, Defendant is once again considered a low recidivism risk. (*Id.*) Defendant's serious health issues also reduces his likelihood and opportunity to reoffend.

The Government also contends Defendant's disciplinary history weighs against compassionate release. (Doc. 128, 6.) The Government claims Defendant has nine significant rule violations which have resulted in sanctions, the most recent involving possession of a narcotic in May 2021. (Doc. 126, 6.) In response, Defendant alleges the assertion that Defendant possessed a narcotic is "factually incorrect." (Doc. 131, 2-3.) The disciplinary record maintained by BOP does not contain any case facts concerning the infractions. (Doc. 131-2.) Defendant further asserts the "Possessing Drugs/Alcohol" violation, which is how the violation is listed on Defendant's Disciplinary Record, is a broad category which includes possessing either ingredients or tools that could be used to manufacture jailhouse wine. (Doc. 131, 3.) Defendant states that having too much wine, white bread, or brown napkins could lead to a violation. (*Id.*) He claims he does not know why the listing states "DHO found I/M to have comm the act of poss of narcotic." (Doc. 132-2, 1.) Defendant insists that it was an alcohol-related infraction, something he has been disciplined for twice. (Doc. 131, 3.) Defendant further contends nine sanctions in the twelve years he has been in BOP custody should be considered "relatively insignificant." (*Id.*) He reports one infraction was for accidentally pulling a fire alarm while he was falling down as he passed out from an unsafe drop in blood sugar, for which he was immediately admitted to medical. (*Id.*) Most of the violations were for refusing housing

or work assignments, and one was for misusing medicine. (*Id.* at 3-4.) While the circumstances of Defendant's most recent violation are not entirely clear, the Court concludes Defendant's disciplinary history is unremarkable and does not suggest a likelihood of reoffending.

While Defendant committed a serious offense, he has already served a sentence that reflects the seriousness of the offense and should promote respect for the law while also affording adequate deterrence. Given that Defendant has serious health issues and is a low recidivism risk, the sentence already served will likely suffice to protect the public from further crimes of Defendant. Based on current sentencing law, a sentence reduction will avoid unwarranted sentence disparities with similarly situated individuals who have been found guilty of similar conduct.

## III. CONCLUSION

Based on the foregoing, Defendant's serious health conditions provide extraordinary and compelling circumstances which warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court further concludes that the factors under § 3553(a) weigh in favor of release.

Therefore, Defendant Tyron Freeman's Second Amended Motion for Compassionate Release [Doc. 126] is GRANTED.

Defendant Tyron Freeman's imprisonment term is reduced to time served plus 72 hours to allow for processing and for Defendant's travel arrangements to be made. For good cause shown, Defendant's Motion for Leave to File Document under Seal [Doc. 125] is GRANTED.

Mr. Freeman is ORDERED to contact the United State Probation Office in the Northern District of Illinois at 312-435-5737 within 72 hours of his arrival in the Northern District of Illinois.

The Clerk is DIRECTED to send a copy of this Opinion to Rochester FMC.

In all other respects, the terms contained in the most recent Judgment [Doc. 104] shall remain in full force and effect.

ENTER: October 23, 2023

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE